757 N.W.2d 205 (2008)
276 Neb. 700
ARAMARK UNIFORM & CAREER APPAREL, INC., Appellant,
v.
HUNAN, INC., doing business as Hunan Restaurant, Appellee.
No. S-07-881.
Supreme Court of Nebraska.
October 31, 2008.
*207 Damien J. Wright, of Welch Law Firm, P.C., Omaha, for appellant.
Mark Porto and John A. Wolf, of Shamberg, Wolf, McDermott & Depue, Grand Island, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
This appeal arises from a contract dispute between Aramark Uniform & Career Apparel, Inc. (Aramark), a Delaware corporation, and Hunan, Inc., a Nebraska corporation doing business as Hunan Restaurant. Aramark filed a demand for arbitration under the parties' arbitration agreement. Hunan, however, objected to arbitration, asserting that the parties' arbitration agreement was unenforceable because it did not comply with a notice provision under Nebraska's Uniform Arbitration Act (UAA).[1] The arbitrator agreed with Aramark's position. He determined that the Federal Arbitration Act (FAA) governed the agreement and that compliance with the UAA was irrelevant because the FAA preempted the UAA's notice provision.[2] The arbitration went forward, but Hunan refused to participate. The arbitrator awarded Aramark $13,144.54.
Aramark petitioned the district court for Douglas County to affirm the arbitration award. Hunan responded with a motion to vacate the award under § 25-2613 of the UAA. The district court found that the contract did not involve interstate commerce and vacated the arbitration award under § 25-2613(3) and (4). We reverse because we conclude that the contract does involve interstate commerce. Therefore, the FAA governs the contract. Because the UAA's notice provision directly conflicts with the FAA, federal law preempts it.

II. BACKGROUND
Aramark contracted to rent Hunan aprons, tablecloths, napkins, bar mops, laundry bags, and other products. The contract contained the following arbitration provision: "Any controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."
In September 2006, Aramark filed its demand for arbitration with the American Arbitration Association, alleging that Hunan had breached the contract. The arbitration association notified Hunan of the demand, and Hunan responded by objecting to arbitration. In a letter to the arbitration association, Hunan asserted that the arbitration provision contained in the parties' agreement was invalid because it did not comply with a notice requirement of the UAA. Specifically, Hunan *208 claimed that the arbitration provision was invalid because it failed to contain language required by § 25-2602.02, which provides: "The following statement shall appear in capitalized, underlined type adjoining the signature block of any standardized agreement in which binding arbitration is the sole remedy for dispute resolution: THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."
Aramark responded that the arbitration provision was valid and enforceable. Aramark asserted that the FAA preempted the UAA because the parties' contract involved interstate commerce. The arbitrator determined that Aramark's position was correct and that the arbitration should proceed. The arbitrator held a hearing on Aramark's claim in Omaha, Nebraska. Aramark appeared and adduced testimony and evidence, but Hunan did not appear. Neither party sought a court order to stay or compel the arbitration proceedings.[3] The arbitrator awarded Aramark $13,144.54. The award included $11,044.54 as damages and $2,100 as expenses.
After the arbitration, Aramark filed both a motion and a petition to confirm the arbitration award in the Douglas County District Court. In response, Hunan requested that the court vacate the arbitration award. Hunan claimed that no valid arbitration agreement existed between the parties because the agreement failed to comply with § 25-2602.02. It also claimed the arbitrator exceeded his power by conducting the hearing in an improper venue under § 25-2606(c). Hunan also moved to transfer the case to the Hall County District Court.
The Douglas County District Court held a telephonic hearing regarding the motion to transfer. The parties briefly discussed Hunan's claim that the arbitration agreement was nonbinding because it failed to comply with § 25-2602.02. The parties did not discuss whether their contract implicated interstate commerce.
After the hearing, the district court entered an order vacating the arbitration award. The court determined that the FAA did not preempt the UAA because "there [was] nothing to suggest that the agreement in question was in interstate commerce or affected by interstate commerce." Because Nebraska law applied, the court declared the agreement was invalid because it did not contain the language required by § 25-2602.02. The court granted Hunan's motion to vacate the arbitration award under § 25-2613(a)(3) and (4).

III. ASSIGNMENTS OF ERROR
Aramark assigns, consolidated and restated, that the district court erred in concluding that (1) the contract was not one within or affecting interstate commerce and (2) the UAA governed the agreement.

IV. STANDARD OF REVIEW
[1] In reviewing a district court's decision to vacate, modify, or confirm an arbitration award under Nebraska's UAA, an appellate court is obligated to reach a conclusion independent of the trial court's ruling regarding questions of law.[4] However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous.[5]

*209 V. ANALYSIS

1. PREEMPTION UNDER FAA
[2] Arbitration in Nebraska is governed by the UAA as enacted in Nebraska. But if arbitration arises from a contract involving interstate commerce, it is governed by the FAA. Under the FAA, written provisions for arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[6] Nebraska law, in contrast, requires that when arbitration is the sole remedy for dispute resolution of a contract, the following statement "shall appear in capitalized, underlined type adjoining the signature block[:] THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."[7] The failure to include this statement renders the arbitration agreement unenforceable under Nebraska law.[8]
Nebraska law is not unique in requiring a contract with an arbitration clause to contain a special notice of the clause.[9] But the U.S. Supreme Court has held that if a contract containing an arbitration clause involves interstate commerce, the FAA governs the contract. In that circumstance, the FAA preempts state law requirements that apply solely to arbitration agreements.[10] The Court has stated that if a state law notice requirement governs "not [just] `any contract,' but specifically and solely contracts `subject to arbitration,'" such requirement "conflicts with the FAA and is therefore displaced by the federal measure."[11]
Under this analytical framework, the initial question is whether the parties' contract "evidenc[es] a transaction involving commerce" as defined by the FAA.[12] If the contract does involve interstate commerce, thereby invoking the FAA, then the FAA preempts the Nebraska notice requirement. Thus, if the notice requirement is preempted, the lack of the statutorily required notice does not render the arbitration agreement unenforceable.[13]

(a) The Scope of the FAA
[3, 4] The U.S. Supreme Court has held that the FAA is substantive law under Congress' Commerce Clause authority and that it applies in state and federal court.[14] Section 2 of the act extends FAA jurisdiction over arbitration agreements contained within "contract[s] evidencing a transaction involving commerce."[15] The Supreme Court has given this jurisdictional phrase a broad interpretation to give expansive scope to the FAA.[16] Giving the FAA an expansive scope allows the Court "to give effect to the FAA's basic purpose, which is to put arbitration provisions on the same footing as a contract's other *210 terms."[17] The Court has further stated that Congress' use of "the word `involving,' like [its use of the word] `affecting,' signals an intent to exercise Congress' commerce power to the full."[18] Thus, the enactment of the FAA signals intent by Congress to "foreclose state legislative attempts to undercut the enforceability of arbitration agreements."[19]
[5] Under the Commerce Clause, Congress has power "to regulate those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce."[20] Thus, Congress' Commerce Clause authority is the prism through which we view the scope of the FAA. "Commerce" is defined in the FAA to include "commerce among the several States."[21]
[6] The Court has generally interpreted Congress' Commerce Clause power broadly[22]:
[It has] upheld a wide variety of congressional Acts regulating intrastate economic activity where [it has] concluded that the activity substantially affected interstate commerce. Examples include the regulation of intrastate coal mining[,] intrastate extortionate credit transactions, . . . restaurants utilizing substantial interstate supplies, . . . inns and hotels catering to interstate guests,. . . and production and consumption of homegrown wheat.[23]
In sum, "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained."[24] Consistently with this broad power, the Court has concluded that the FAA's reach is as broad as Congress' Commerce Clause authority.[25]

(b) The Parties' Arbitration Agreement Affects Interstate Commerce
[7] As we know, courts have given Congress an expansive power over economic and commercial activities. So, it is difficult to imagine an economic or commercial activity that would be outside the scope of the Commerce Clause and, by extension, the FAA.[26]
We have previously determined that transactions involving commerce include contracts for services between parties of different states.[27] Similarly, the transaction underlying the contract between Aramark and Hunan, a contract for renting goods, is a contract for services that is unquestionably commercial. Also, both *211 parties to the contract are incorporated in different states. Aramark is a Delaware corporation engaged nationwide in renting linen supplies. Hunan, a Nebraska corporation, has engaged Aramark's services by renting linen supplies for use in the operation of its restaurant. Thus, a commercial service contract exists between two corporations incorporated in different states for the renting of linen supplies. The contract between Aramark and Hunan clearly involves "commerce," which is defined in the FAA to include "commerce among the several states."[28]

2. NEBRASKA'S UAA'S NOTICE PROVISION IS PREEMPTED
[8, 9] Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[29] Under this section, the Supreme Court has declared that state contract law applies to contracts with arbitration agreements governed by the FAA. State contract law can determine "`the validity, revocability, and enforceability of contracts generally.' . . . Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements" governed by federal law without conflicting with § 2.[30]
[10] The Court has made clear, however, that courts may not invalidate arbitration agreements governed by the FAA under state laws applicable only to arbitration provisions.[31] "Congress [has] precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed `upon the same footing as other contracts.'"[32]
The Court has considered a similar notice requirement in a Montana statute. That statute required any contract containing an arbitration provision to provide special notice in capitalized, underlined letters on the front page of the contract.[33] The Court held that the notice provision was unenforceable because the FAA governed the contract. The Court concluded that the notice statute directly conflicted with § 2 of the FAA. The statute "condition[ed] the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally."[34] Because the FAA is substantive law, it preempted the Montana statute regarding arbitration agreements governed by the FAA.[35] Thus, when a contract is governed by the FAA, the state notice requirements are preempted by the FAA.
The Montana statute analyzed in Doctor's Associates, Inc. v. Casarotto[36] is similar to the Nebraska statute. Like the Montana statute, Nebraska's notice requirement in § 25-2602.02 applies only to arbitration provisions and renders the arbitration clause unenforceable upon failure to provide the notice requirement. Just *212 like the Montana statute in Doctor's Associates, Inc., § 25-2602.02 places arbitration agreements "in a class apart from `any contract,' and singularly limits their validity."[37] Because the FAA governs the service contract, we must yield to the precedent set by the Court's holding in Doctor's Associates, Inc. We hold that the FAA preempts § 25-2602.02 for the contract. We reverse the district court's judgment and remand the cause with directions to confirm the arbitration award.
REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Neb.Rev.Stat. §§ 25-2601 to 25-2622 (Reissue 1995 & Cum. Supp. 2006).
[2] Compare § 25-2602.02 and 9 U.S.C. § 2 (2006).
[3] See § 25-2603.
[4] See, Hartman v. City of Grand Island, 265 Neb. 433, 657 N.W.2d 641 (2003); Jones v. Summit Ltd. Partnership Five, 262 Neb. 793, 635 N.W.2d 267 (2001).
[5] Id.
[6] 9 U.S.C. § 2.
[7] § 25-2602.02.
[8] See Kramer v. Eagle Eye Home Inspections, 14 Neb.App. 691, 716 N.W.2d 749 (2006).
[9] See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).
[10] Id.
[11] See id., 517 U.S. at 683, 116 S.Ct. 1652.
[12] 9 U.S.C. § 2.
[13] See Doctor's Associates, Inc., supra note 9.
[14] Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), citing Moses H. Cone Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
[15] 9 U.S.C. § 2. See Southland Corp., supra note 14.
[16] Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
[17] Good Samaritan Coffee Co. v. LaRue Distributing, 275 Neb. 674, 678, 748 N.W.2d 367, 371 (2008), citing Allied-Bruce Terminix Cos., supra note 16.
[18] See Allied-Bruce Terminix Cos., supra note 16, 513 U.S. at 277, 115 S.Ct. 834.
[19] See Southland Corp., supra note 14, 465 U.S. at 16, 104 S.Ct. 852.
[20] United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).
[21] 9 U.S.C. § 1 (2006).
[22] See, United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000); Lopez, supra note 20.
[23] Lopez, supra note 20, 514 U.S. at 559-60, 115 S.Ct. 1624 (citations omitted).
[24] Id., 514 U.S. at 560, 115 S.Ct. 1624.
[25] Allied-Bruce Terminix Cos., supra note 16.
[26] See Service Corp. Intern. v. Fulmer, 883 So.2d 621 (2003).
[27] See, Webb v. American Employers Group, 268 Neb. 473, 684 N.W.2d 33 (2004); Smith Barney, Inc. v. Painters Local Union No. 109, 254 Neb. 758, 579 N.W.2d 518 (1998). See, also, Comanche Indian Tribe of Oklahoma v. 49, L.L.C., 391 F.3d 1129 (10th Cir.2004).
[28] 9 U.S.C. § 1.
[29] 9 U.S.C. § 2 (emphasis supplied).
[30] Doctor's Associates, Inc., supra note 9, 517 U.S. at 687, 116 S.Ct. 1652, citing Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).
[31] Doctor's Associates, Inc., supra note 9.
[32] Id., 517 U.S. at 687, 116 S.Ct. 1652. Accord Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).
[33] Mont.Code Ann. § 27-5-114(4) (1995).
[34] Doctor's Associates, Inc., supra note 9, 517 U.S. at 687, 116 S.Ct. 1652.
[35] Id.
[36] Id.
[37] Id., 517 U.S. at 688, 116 S.Ct. 1652.